CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JUN 18 2007

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| ISRAEL RAY COOPER, | ) | |
| Plaintiff, | ) | Civil Action No. 7:07cv00167 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| DONNIE M. SIMPKINS, et al., | ) | By: Samuel G. Wilson |
| Defendants. | ) | United States District Judge |

Plaintiff Israel Ray Cooper, a Virginia inmate proceeding pro se, brings this action under 42 U.S.C. § 1983, alleging that the defendants failed to provide him with adequate medical care, denied him due process, and subjected him to cruel and unusual living conditions. Cooper seeks $34,200 in damages and injunctive relief requiring New River Valley Regional Jail ("NRVRJ") to "institute a due process committee or hearing in determining custody status concerning lockup, classifications, etc.." The court finds that Cooper's allegations fail to state a claim upon which the court may grant relief and, therefore, dismisses his action pursuant to 28 U.S.C. § 1915A(b)(1).[1]

I.

Cooper alleges that when he arrived at NRVRJ in February 2006, he was on the psychotropic medication Seroquel. However, in March 2006, when his supply of Seroquel ran out, defendant Dr. Moses, the jail physician, directed that Cooper's medication be changed to Haldol, another psychotropic medication. Cooper claims that he was not seen by a doctor or qualified mental health professional before his medication was changed. Cooper filed an institutional grievance regarding the change in his medication, and Dr. Moses responded that he thought Cooper would "do better"

---

[1] Moreover, the court finds that plaintiff's claim for injunctive relief is moot because he is no longer housed at the NRVRJ. Generally, claims for injunctive relief become moot when the conditions adversely affecting the plaintiff no longer exist. See Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991); see also Magee v. Waters, 810 F.2d 451, 452 (4th Cir. 1987) (holding that the transfer of a prisoner rendered the prisoner's claim for injunctive relief moot). Here, Cooper seeks injunctive relief requiring NRVRJ to establish new policy. However, Cooper has been transferred from the NRVRJ to Red Onion State Prison. Therefore, his request for injunctive relief is moot and the court denies it.

on the new medication. Cooper again complained about the new medication, stating that it was not working and that he did not feel well. Dr. Moses responded that Cooper should give the new medication a try and at some point, Dr. Moses increased the dosage. Cooper concedes that he had a medical appointment scheduled with Dr. Moses shortly after his medication was changed. Cooper alleges that upon beginning the new medication, his behaviors of hallucinating, making baby dolls known as "baby spooky" or "baby doll spooky," and talking to his doll(s), which were previously under control, worsened and became uncontrolled. It appears from his complaint and supporting documentation, that Cooper was using jail property, such as towels, sheets, and clothing to make these dolls.

In mid-August, Cooper was warned that if he destroyed any more jail property to make his dolls, he would be placed in segregation. He claims that defendant Lt. Col. McPeak placed a directive in his file instructing that Cooper be placed on suicide watch if he made another "baby doll spooky." On August 25 or 26, 2006, Cooper alleges that he was placed in a strip-cell on "suicide status," with nothing except a paper gown, as a result of a charge that Cooper was destroying jail property after a one-foot tall "baby doll spooky" was allegedly found in his cell. At the hearing on this charge, the charge was dismissed. Thereafter, Cooper petitioned to be sent back to the medium security pod that he claims he had been in before the charge; however, jail officials kept him in segregation. In a response to one of his grievances, jail officials indicated that Cooper was in administrative segregation, not punitive segregation. On September 8, 2006, Cooper was again charged with destroying jail property and found guilty on September 13, 2006. Cooper claims that this conviction was based on a fabricated charge. He argues that he should not have been placed in the strip-cell on suicide watch because he did not state that he would hurt himself or others. He claims that his placement on suicide-watch was a means of punishment for making his dolls. He also

2

complains that the jail, including his strip-cell, was air-conditioned.

Cooper also alleges that from August 28, 2006 to September 19, 2006, while he was in the segregation unit in a strip-cell, he was denied towels, wash cloths, sheets, a pillow case, a blanket, a laundry bag, a pillow, and adequate clothing. Cooper filed a grievance indicating that he was being denied these items, to which jail officials allegedly responded, "as long as you continue to destroy items of jail property, you will not be allowed to possess it."

Finally, on September 8, 2006, Cooper claims that his property was "stolen" from him. He alleges that officers performed a shakedown of his cell without him present and "seized" his Bible, two drawn portraits, personal photos, and coloring pencils. Cooper claims that his coloring pencils were thrown away and that the rest of his property was turned over to Virginia state police.

Cooper was transferred to Red Onion State Prison on September 19, 2006.

## II.

In order to state a cognizable claim for denial of medical care under the Eighth Amendment, a plaintiff must allege facts sufficient to demonstrate deliberate indifference to a serious medical need. Estelle v. Gamble, 429 U.S. 97, 104 (1976). To establish deliberate indifference, a plaintiff must present facts to show that the defendant had actual knowledge of and disregard for an objectively serious medical need. Farmer v. Brennan, 511 U.S. 825 (1994); see also Rish v. Johnson, 131 F.2d 1092, 1096 (4th Cir. 1997). A claim regarding a disagreement between an inmate and medical personnel over diagnosis or course of treatment and allegations of malpractice or negligence in treatment do not state cognizable constitutional claims under the Eighth Amendment. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985); Estelle, 429 U.S. at 105-06. Moreover, claims of medical judgment are not subject to judicial review. Russell v. Sheffer, 528 F.2d 318 (4th Cir. 1975).

3

Cooper claims that defendant Dr. Moses denied him adequate medical treatment when he discontinued Cooper's Seroquel. However, he concedes that Dr. Moses prescribed him a different psychotropic medication, Haldol, at the same time his previous medication was ended. He also concedes that he had an appointment with Dr. Moses scheduled for shortly after he began taking his new medication. Accordingly, though Cooper may desire a different medication to treat his illnesses, the court finds his claim amounts to nothing more than a doctor-patient disagreement regarding proper course of treatment, which is not actionable under the Eighth Amendment. Further, with regard to his alleged side effects and worsened behaviors from the new medication, at most, he has claimed medical malpractice or negligence in treatment, which are also not actionable under the Eighth Amendment.

Cooper also alleges that defendants Lt. Col. McPeak and Officer Simpkins denied him adequate medical treatment. A medical treatment claim cannot be brought against a supervisory official absent an allegation that the official was personally connected with the denial of medical treatment. Vinnledge v. Gibbs, 550 F.2d 926, 928 (4th Cir. 1977). This entails a showing that the supervisor failed to promptly provide an inmate with needed medical care, deliberately interfered with a prison physician's performance, and/or tacitly authorized or was indifferent to a prison physician's constitutional violation. Miltier v. Beorn, 896 F.2d 848, 854 (4th Cir. 1990). Moreover, supervisory officials are entitled to rely on medical judgments made by prison physicians. Id. at 854-55. Cooper has not alleged that McPeak or Simpkins were personally connected with or that they in any way interfered with his receipt of medical treatment. Accordingly, the court finds that Cooper has not alleged a constitutional claim of denial of adequate medical treatment against defendants McPeak and Simpkins.

4

## III.

Cooper also claims that while living in the segregation unit he was subjected to cruel and unusual living conditions. Although the Eighth Amendment protects prisoners from cruel and unusual living conditions, an inmate is not entitled to relief simply because of exposure to uncomfortable, restrictive, or inconvenient conditions of confinement, for, "[t]o the extent that such conditions are restrictive or even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." Rhodes v. Chapman, 452 U.S. 337, 347 (1981). Therefore, in order to state a claim of constitutional significance regarding prison conditions, a plaintiff must allege that the living conditions violated contemporary standards of decency and that prison officials were deliberately indifferent to those conditions. Wilson v. Seiter, 501 U.S. 294 (1991). In addition, a plaintiff must allege facts sufficient to show either that he has sustained a serious or significant mental or physical injury as a result of the challenged conditions or that the conditions have created an unreasonable risk of serious damage to his future health. Strickler v. Waters, 989 F.2d 1375, 1380-81 (4th Cir. 1993); Helling v. McKinney, 509 U.S. 25 (1993). While segregation and strip-cell conditions may be inconvenient, uncomfortable, and unfortunate, Cooper has not alleged anything to suggest that these conditions violate contemporary standards of decency. Nor has he alleged that because of the conditions, he has sustained a serious or significant injury or is at risk of a future injury. Therefore, Cooper has failed to state a constitutional claim under the Eighth Amendment.

## IV.

Cooper claims that he was placed in the segregation unit without due process. In order to prevail on a procedural due process claim, an inmate must first demonstrate that he was deprived of "life, liberty, or property" by governmental action. Bevrati v. Smith, 120 F.3d 500, 502 (4th Cir. 1997). Although prisoners are afforded some due process rights while incarcerated, those liberty

5

interests are limited to "the freedom from restraint which, while not exceeding the sentence in such and unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995). Changes "in a prisoner's location, variations of daily routine, changes in conditions of confinement (including administrative segregation), and the denial of privileges [are] matters which every prisoner can anticipate [and which] are contemplated by his original sentence to prison." Gaston v. Taylor, 946 F.2d 340, 343 (4th Cir. 1991). Further, prisoners do not have a constitutionally recognized liberty interest in a particular security classification or a constitutional right to be confined in a particular prison. Hewitt v. Helms, 459 U.S. 460, 468 (1983); Meachum v. Fano, 427 U.S. 215, 224 (1976). Therefore, the court finds that Cooper has failed to state a claim of constitutional magnitude as to his due process claim.

## V.

Finally, Cooper alleges that officers did a shakedown of his cell while he was not present and stole certain items from him. The intentional or negligent deprivation of personal property by a prison employee acting outside the scope of official policy or custom does not rise to the level of a constitutional violation so long as the state provides an adequate post-deprivation remedy. See Hudson v. Palmer, 468 U.S. 517 (1984); Parratt v. Taylor, 451 U.S. 527 (1981). The state has established a grievance procedure which Cooper has utilized in this matter. Further, the Virginia Tort Claims Act is also available to Cooper. See Wadhams v. Procunier, 772 F.2d 75 (4th Cir. 1985) (holding the remedies available under the Virginia Tort Claims Act to be sufficient post-deprivation remedies); Ballance v. Young, 130 F.Supp.2d 762, 767 (W.D. Va. 2000). Accordingly, because there are state remedies capable of addressing Cooper's alleged injury, the court finds that he has

6

failed to state a cognizable constitutional claim regarding his confiscated or destroyed property.

## VI.

For the reasons stated herein, the court dismisses Cooper's suit pursuant to § 1915A(b)(1) for failure to state a claim.

**ENTER**: This 18th day of June, 2007.

_____
United States District Judge